[No. 6921.   Decided March 4, 1908.]

THE CITY OF SEATTLE, *Appellant*, v. SEATTLE ELECTRIC COMPANY, *Respondent*.[1]

MUNICIPAL CORPORATIONS—STREET IMPROVEMENTS—ASSESSMENTS— PROPERTY LIABLE—STREET RAILWAY FRANCHISES.  Under Bal. Code, § 796, authorizing the assessment of lots, blocks or parcels of land that may be benefited by a municipal improvement, a street railway company's right of way and trackage upon a street, cannot be assessed where it did not own the fee in the street, but only held a franchise for its use for a limited time.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered March 7, 1907, after a hearing on the merits, vacating an assessment made by commissioners appointed to levy an assessment upon property specially benefited by a municipal improvement.   Affirmed.

*Scott Calhoun* and *Elmer E. Todd*, for appellant, cited: *In re Westlake Avenue*, 40 Wash. 144, 82 Pac. 279; *Chicago City R. Co. v. Chicago*, 90 Ill. 573, 32 Am. Rep. 54; *Chicago v. Cummings*, 144 Ill. 446, 33 N. E. 34; *Rich v. Chicago*, 152 Ill. 18, 38 N. E. 255; *Cicero & Proviso Street R. Co. v. Chicago*, 176 Ill. 501, 52 N. E. 866; *Little v. Chicago etc. R. Co.*, 46 Ill. App. 534; *Appeal of North Beach & Mission R. Co.*, 32 Cal. 499; *New Haven v. Fair Haven etc. R. Co.*, 38 Conn. 422, 9 Am. Rep. 399.

[1]Reported in 94 Pac. 194.

*James B. Howe* and *Hugh A. Tait*, for respondent, to the point that the franchise and right of way or trackage cannot be assessed, cited: *Commercial Elec. L. & P. Co. v. Judson*, 21 Wash. 49, 56 Pac. 829, 57 L. R. A. 78; *Front St. Cable R. Co. v. Johnson*, 2 Wash. 112, 25 Pac. 1084, 11 L. R. A. 693; *State v. District Court*, 31 Minn. 354, 17 N. W. 954; *Lake Shore etc. R. Co. v. Grand Rapids*, 102 Mich. 37, 60 N. W. 767; *Chicago etc. R. Co. v. Ottumwa*, 112 Iowa 300, 83 N. W. 1074, 51 L. R. A. 763; *Philadelphia v. Philadelphia etc. R. Co.*, 33 Pa. St. 41; *Farmers' Loan & Trust Co. v. Ansonia*, 61 Conn. 76, 23 Atl. 705; *Koons v. Lucas*, 52 Iowa 177, 3 N. W. 84; *City of Muscatine v. Chicago etc. R. Co.*, 88 Iowa 291, 55 N. W. 100; *King v. Duryea*, 45 N. J. L. 258; *Oshkosh City R. Co. v. Winnebago County*, 89 Wis. 435, 61 N. W. 1107; *People ex rel. James v. Gilon*, 126 N. Y. 640, 27 N. E. 285; *Lorain Steel Co. v. Norfolk etc. R. Co.*, 187 Mass. 500, 73 N. E. 646.

FULLERTON, J.—The city of Seattle, pursuant to powers conferred on it by its charter and by the general laws, caused all that portion of Westlake avenue lying between Denny way and Mercer street to be widened and otherwise improved. The respondent, Seattle Electric Company, owns and operates an electric railway on certain streets of the city of Seattle, among which is Westlake avenue, under a franchise granted by the city to J. D. Lowman and Jacob Furth, of whom it is the successor in interest. The track on the improved part of Westlake avenue extends in both directions beyond such part, and such track is but a small portion of one general system of street railway operated by the respondent under the franchise above mentioned. The ordinance under which the improvement was made provided that the improvement should be paid for in part by an assessment on the property benefited thereby, and to that end commissioners were duly appointed to apportion the part assessed to the property be-

tween each several lot, block, tract, and parcel of land in the proportion in which they found each to be severally benefited. The commissioners so appointed made up an assessment roll as directed, in which they returned as property specially bene- fited the respondent's "right of way and trackage upon West- lake avenue between Denny way and Mercer street," assessing thereon the sum of $2,500. To the report of the commis- sioners, the respondent filed objections in writing, contending that the assessment insofar as it sought to impose a charge upon its right of way and track to pay the costs of the street improvement was contrary to law and void, and moved that such assessment be set aside and vacated. On the hearing the court sustained the objections and made the orders moved for, further ordering that the amount of the assessment which the commissioners had sought to charge on the property of the respondent be paid by the city out of its general fund. The city appeals.

The section of the statute conferring authority upon the commissioners to make the assessment and the section under which they proceeded in making the assessment, reads as fol- lows:

"It shall be the duty of such commissioners to examine the locality where the improvement is proposed to be made, and the lots, blocks, tracts and parcels of land that will be specially benefited thereby, and to estimate what proportion of the total cost of such improvements will be of benefit to the public and what proportion thereof will be of benefit to the property to be benefited, and apportion the same between the city and such property, so that each shall bear its relative equitable propor- tion; and having found said amounts to apportion and assess the amount so found to be of benefit to the property upon the several lots, blocks, tracts, and parcels of land in the propor- tion in which they will be severally benefited by such improve- ment: *Provided*, That no lot, block, tract, or parcel of land shall be assessed a greater amount than it will be actually benefited, nor shall any lot, block, tract, or parcel of land which shall have been found by the jury or court to be dam- aged be assessed for any benefits: *And provided further*, That

it shall not be necessary for said commissioners to examine the locality excepting where the ordinance provides for the establishment, opening, widening or improvement of streets, avenues, alleys or highways. Such part of the compensation, damages and costs as is not finally assessed against property benefited shall be paid from any general funds of the city or town applicable thereto." Bal. Code, § 796 (P. C. § 5070).

A reading of this section makes it at once apparent that the commissioners are authorized to assess only lots, blocks, tracts and parcels of land specially benefited to pay the costs of a street improvement, and unless the respondent's interests in this street can be held to be one or the other of these there is no authority for the charge the commissioners sought to impose upon it. It seems to us that it cannot be so held. The respondent's right in the street is in no sense a lot, block, tract, or parcel of land. It does not own the fee of the street over which its tracks are laid and its cars operated, nor does it have dominion or control over that portion of the street. On the contrary, the fee of the street rests in the abutting property holders, to whom it will revert when the interests of the public therein cease from any cause, and dominion and control over it is vested in the public authorities in whom it will remain as long as the street retains its public character. The respondent's rights therein are such and only such as these public authorities have conferred, and are, roughly speaking, the right to construct and maintain for a limited time a railway track on a fixed portion of the street, and the right to operate cars on such track for the purpose of carrying passengers and freight for hire. This does not constitute either a lot, block, tract or parcel of land, nor does it constitute an interest in land as that term is ordinarily understood, it is an easement only, and as such is not assessable under a power to assess lots, blocks, tracts and parcels of land. Nor has the railway any such an easement in the street that a specific portion of it can be benefited in such a way as to warrant a special assessment on that particular part of its easement. Doubtless

to lessen the grade of a street would benefit the railway company inasmuch as the lessened grade would enable it to carry its load with a less expenditure of power than the heavier grade required, and to widen the street would doubtless benefit it, as it would tend to prevent congestion of the street and thus permit of a freer movement of its cars, enabling the company to carry its load with a lesser equipment in the way of rolling stock and with a less number of employees than the narrower street required. But these are not specific benefits to a particular part of the road; they are general benefits inuring to the entire system, and for which the system itself, not a small fraction thereof, should be made responsible.

The fact, furthermore, that the cost of the benefit was not made a charge on the entire system is evidence of the fact that the legislature did not have street railways in mind when it enacted the law relating to special assessments. Had it had them in mind it is not to be doubted that it would have provided some rational means of collecting the assessment when made. If the city's contention be correct, the legislature provided for the enforcement of the assessment, not by making the charge a lien against the entire road, but by making it a charge on that portion of the road only which passes over the improved street, be the same ten blocks in length, as in this instance, or only the length of an ordinary car, as it might be in another case, and confined the power to collect to a sale of that specific part. This, it will be seen, could result in dividing the street car system into many small independent parts, the one part operated without regard to the other, practically nullifying its primary purpose, namely, the speedy transportation of passengers from one part of the city to another.

But it is said our statute is adopted from the statute of Illinois, and that the courts of that state had, prior to its adoption by this state, construed it as empowering municipalities to impose a part of the burden of improving the streets

upon the street car companies. It is true, as we said in the case of *In Re Westlake Avenue*, 40 Wash. 144, 82 Pac. 279, that the statute was borrowed almost literally from that state, and insofar as its provisions were in question in that case, the statement was correct and the deduction drawn from the fact applicable. But the Illinois statute makes the assessment a liability against the person owning the property assessed and provides that judgment may be taken against such owner as upon a personal debt on which execution may issue against all of his property, personal as well as real. This provision has the effect of making the tax a lien upon the entire property of a street car company, and prevents its dissolution by sale in minor parts. This part of the statute of Illinois was not adopted by our legislature, and we think the failure to so adopt it precludes the idea that they intended to adopt the construction put upon it by the courts of that state, since such construction must have been influenced largely if not entirely by this provision.

The case of *Northern Pac. R. Co. v. Seattle*, 46 Wash. 674, 91 Pac. 244, is not in point here. The right of way in that case abutted upon the street, it was no part of the street itself and was not an additional burden upon the street. The right of way and track was also the private property of the railroad company in the sense that the company alone had the use of and control over it, while in this case the general public still have the use and do use the entire street. The right of way in that case was perpetual, while here it is for only a limited time. The land in that case was to all intents and purposes the railway company's property, while here the fee as well as the right of control belong to others. Other differences between the cases will readily occur to the mind, but these are sufficient to show the want of similarity between them.

The authorities from other states are collected in the briefs of counsel. They are not uniform even under similar or like

statutes, but we think the better reason, as well as the weight of authority, is with the conclusion adopted by the trial court. The judgment appealed from will therefore be affirmed.

RUDKIN, MOUNT, and DUNBAR, JJ., concur.

ROOT, J., dissents.

HADLEY, C. J. and CROW, J., took no part.