[Civ. No. 998.    Second Appellate District.—December 13, 1911.]

LOS ANGELES PACIFIC COMPANY, a Corporation, Respondent, v. A. A. HUBBARD, ADNA R. CHAFFEE, and W. M. HUMPHREYS, Constituting the Board of Public Works of the City of Los Angeles, Appellants.

STREETS—OPENING OR WIDENING—CONSTRUCTION OF ACT OF 1903— "PROPERTY"—"LAND"—"IMPROVEMENTS" NONASSESSABLE.—Though the word "property," in itself considered, has a generic signification, including "land" and other property, yet, as those terms are employed in the act of 1903, for the opening or widening of streets, they are clearly used as synonymous, and that act contemplates that "land" alone, without reference to the value of "improvements" thereon, shall be assessed within the district provided for the opening or widening of a street.

ID.—PROVISION FOR ASSESSING "PROPERTY" OF "RAILROADS"—"LAND."—A provision in the act of 1903 for assessing the "property of any railroad or street railroad within said assessment district" is to be construed in connection with the other provisions of said act, and is to be interpreted as showing the intention of the legislature to use the word "property" as applied to such railroad or street railroads in the limited sense, as having reference only to that species of property designated as "land," which is "the solid material of the earth."

ID.—IMPROPER ASSESSMENT OF "IMPROVEMENTS" ENTERING INTO CONSTRUCTION AND OPERATION OF "STREET RAILROAD."—The superintendent of streets had no authority in assessing an electric "street railroad" within the limits of an assessment district, for the widening of a street, to assess the "ties, tracks, poles, rails and switches" as such, which enter into the construction of the street railroad and are used in the operation thereof, and which are in the nature of "improvements" which are never assessable as such.

ID.—PROPER ASSESSMENT OF "FRANCHISE" OF STREET RAILROAD—"INTEREST IN LAND."—There was properly included in the assessment

of a street railroad its "franchise" whereby it was granted the right to construct, maintain and operate its railroad, along and over that portion of the street within the boundaries of the district, by which it acquired an interest in the soil of the street, consisting of the location of its road in the street, and the right to lay its rails therein, and attach them firmly to the soil, and to run its cars over them for profit, and to the exclusive use thereof for that purpose, which is an "interest in the land" and is "real estate."

Id.—Immovable Character of "Street Railroad."—A street railroad is as immovably established on the particular portion of the earth occupied by it as is the lot occupied by stores fronting on the same street, and the estate in the one can no more be enjoyed away and apart from its fixed locality than the estate in the other.

Id.—Benefit by Widening of Street—Proportion of Cost.—A street railroad company operating its line along and over a street, under a franchise so to do, may be largely benefited by the widening of a street, and may therefore be required to pay the cost of such improvement in proportion to the benefits received.

Id.—Mode of Assessment and Enforcement.—It is held that there is no insuperable difficulty in making a diagram delineating that part of the street railroad which lies within the district assessed for the purpose specified, nor in making a sale to enforce the assessment to one who would take the least part of the property assessed, as directed in section 25 of the act of 1903.

Id.—Proper Assessment and Sale Carrying Improvements.—Though the improvements cannot be separately assessed, yet a proper assessment and sale affects and carries the improvements as part of the "land"; and the assessment of the franchise of a street railroad company's interest in the land constituted an assessment of all the property included in the term "land" when applied to plaintiff's interest in the street widened. Since the greater includes the less, and since the "ties, tracks, poles and switches" were included in the term "franchise," upon which the assessment was levied and enforced, it is immaterial that they were improperly included in the assessment, and were surplusage therein.

Id.—Objection to Form of Assessment—Appeal to City Council—Untenable Injunction.—Any objection to the form of an assessment should be made to the council as provided in section 19 of the act of 1903, which is authorized to correct, change or modify the same. No such objection can constitute a ground for an injunction to enjoin the sale, nor can surplusage in the assessment of a street railroad franchise afford any ground for such injunction.

APPEAL from a judgment of the Superior Court of Los Angeles County. W. P. James, Judge.

The facts are stated in the opinion of the court.

John W. Shenk, City Attorney, and Charles D. Houghton, Deputy City Attorney, for Appellants.

Gurney E. Newlin, Roy V. Reppy, J. W. McKinley, and S. V. McClure, for Respondent.

SHAW, J.—In proceedings had and taken by the city of Los Angeles for the purpose of opening and widening Sixteenth street, pursuant to the provisions of the street opening act of 1903, an assessment for the cost of the proposed improvement was levied against the lands and property located within the boundaries of the district as specified in the ordinance of intention. Among other assessments was one levied upon certain property of plaintiff within the district so established, which assessment so made was as follows:

"All ties, tracks, poles, wires, switches, franchises, etc., used in operating an electric street railway on Sixteenth street, between the west line of Figueroa street prolonged southerly across Sixteenth street and the intersection of said electric street railway tracks with the electric street railway tracks of the Los Angeles Interurban Railway Company at Georgia street, and between the intersection of the said electric street railway tracks with the electric street railway tracks of the Los Angeles Interurban Railway Company at Burlington avenue and the east line of Pacific avenue prolonged southerly across Sixteenth street."

Plaintiff refused to pay the assessment and the property so assessed was advertised for sale on account of delinquency in the payment thereof; whereupon this action was instituted, praying that defendants, as said board of public works, be perpetually enjoined from making such sale. Judgment went for plaintiff and defendants appeal therefrom on the judgment-roll.

The property assessed constitutes a part of an electric railroad owned and operated by plaintiff within and extending from the city to points outside thereof.

The chief ground urged in support of a reversal involves the question as to whether the property described is subject to an assessment under the act pursuant to the provisions of which the proceedings were had. Appellants base their right to make the assessment upon section 16 of the act, which re-

quires the street superintendent, upon delivery to him of a diagram made by the city engineer showing "each separate lot, piece, or parcel of land within the assessment district," together with the dimensions of each such parcel (Id., sec. 15), to "assess the total expense of the proposed improvement upon and against the lands, including the property of any railroad or street railroad within said assessment district, . . . in proportion to the benefits to be derived from said improvement."

Property is a generic term, and since it includes anything which may be the subject of ownership (Civ. Code, sec. 654), its meaning in a given case, and whether or not limited in application, must be determined by ascertaining the sense in which it is used. It is apparent from a reading of the act that the legislature used the term "property" as applying to land only. Indeed, throughout the act the words "property," "lands," and "each lot, piece, or parcel of land," are used interchangeably. Section 15 requires each lot, piece or parcel of land to be designated upon a diagram, which diagram forms the basis for the acts of the superintendent in making the assessment. Section 17 prescribes the manner of making the assessment, the amount of which shall be set opposite each "lot, piece, or parcel of land," which assessment (section 20) shall be a lien upon "the property against which it is made." Upon offering the property for sale for delinquent assessments, it shall be sold (section 23) to the one who will take the "least quantity of land" and pay the assessment, and to whom the street superintendent shall execute a certificate of sale (section 26), "setting forth a description of the property sold." These and other provisions clearly indicate that in requiring the superintendent of streets to assess the "property of any railroad or street railroad within said assessment district," the legislature used the word "property" in a limited sense, and as having reference to that species of property only designated as land, which is "the solid material of the earth." (Civ. Code, sec. 659.) Hence, it follows there was no authority for the action of the superintendent of streets in levying an assessment against the "ties, tracks, poles, rails and switches" as such, entering into the construction of plaintiff's street railroad and used in the operation thereof. He might with equal propriety have as-

sessed the buildings and improvements erected upon a lot or tract of land located in the district. The land, not the improvements thereon, is subject to assessment for the cost of widening a street, under the street opening act of 1903.

Included in the assessment was the franchise, whereby was granted the right to construct, maintain and operate plaintiff's railroad along and over that portion of the street within the boundaries of the district. The *Appeal of the North Beach & M. R. R. Co.,* 32 Cal. 499, and cited with approval in subsequent cases, is authority for the statement that such right constitutes an estate in the land of the street. In discussing a like question involving an assessment for benefits accruing to a street railroad in the widening of Kearny street in San Francisco, the court said: "Thus it appears that the appellant has acquired an interest in the soil in Kearny street; that it consists in the location of the road in the street, its right to lay down rails and attach them to the soil, and to run its cars over them for profit; its right to the exclusive use of them and the streets, so far as is necessary for the purpose, in the mode prescribed; that this interest is property—an interest in the land—and that it is real estate, and the rails thus laid down, attached to the soil and annexed to the easement became themselves a part of the land—of the estate of the company—and that, in those states where no special provision is made for taxing this species of property in a different mode, it is assessed as real estate in the same manner, and upon the same principles, as land—as if the company owned the land itself upon which the track is laid to the extent of its interest in it. . . . It is as immovably established on the particular portion of the earth as the lot occupied by stores fronting on the same street, and the estate in the one can no more be enjoyed away and apart from its fixed locality than the estate in the other." (See, also, *Stockton G. & E. Co.* v. *San Joaquin Co.,* 148 Cal. 313, [83 Pac. 54, 5 L. R. A., N. S., 174, 7 Ann. Cas. 511].) That a street railroad company operating its line along and over a street under a franchise so to do may be largely benefited by the widening of the street, and may therefore be required to pay the cost of such improvement in proportion to the benefits received, must be conceded. (*Appeal of North Beach & M. R. R. Co.,* 32 Cal. 499.) Indeed, the proposition is admitted by learned counsel

for respondent, who, however, contends that the payment of such benefits cannot be enforced by sale and conveyance of a part of the right of way essential to the operation of a street railroad in the interest of the public; that to thus dismember and break up the entirety and utility of the road as a line of travel would impair the paramount rights of the public therein to have the same operated in execution of an important public trust. This contention finds apparent support in numerous authorities cited by respondent. (*State* v. *District Court of Ramsey County,* 31 Minn. 354, [17 N. W. 954]; *Seattle* v. *Seattle Electric Co.,* 48 Wash. 599, [94 Pac. 194, 15 L. R. A., N. S., 486]; *In re City of Seattle,* 49 Wash. 109, [94 Pac. 1075]; *Seattle* v. *Seattle Electric Co.,* 54 Wash. 460, [103 Pac. 807]; *New Jersey St. Ry. Co.* v. *Mayor of Jersey City,* 68 N. J. L. 140, [52 Atl. 300]; *Southern Cal. Ry. Co.* v. *Workman,* 146 Cal. 80, [79 Pac. 586, 82 Pac. 79, 2 Ann. Cas. 583].) An examination of these cases, however, shows that none are in point, for the reason that in all of them the right to make the assessment was considered under statutes providing in general terms only for assessing property for local improvements. The question is not an open one in this state, it having been held by the supreme court (*Southern Cal. Ry. Co.* v. *Workman,* 146 Cal. 80, [79 Pac. 586, 82 Pac. 79, 2 Ann. Cas. 583]) that the right of way of a railroad fronting and abutting upon a street is not subject to assessment for the cost of improving the street under the general language used in the Vrooman Act. As to all lands owned by a railroad within the improvement district, other than rights of way over which its road is operated, and which are essential to such operation, the general language of section 16 of the act in question, directing the street superintendent to assess the cost of the improvement upon the lands in the district, would apply with equal force as to lands held in private ownership; and, hence, if this was all that was intended, there could be no purpose in inserting the words, "including the property of any railroad or street railroad" within the district. Some effect must be given this language. (Civ. Code, sec. 3541.) We perceive no constitutional objection to an act of the legislature providing for the assessment of all or a part of the right of way, whether owned in fee by the railroad, or consisting merely of an easement, to cover benefits received as a

result of the widening of a street; and, since the words inserted in the act constitute express authority and direction to the street superintendent to assess the property of railroads or street railroads within the district, and inasmuch as all land other than rights of way in the district owned by a railroad is clearly subject to assessment under the general language used, it must have been the intent of the legislature to provide for the assessing of such rights of way, whether the same consisted of an easement or title in fee, where the property would be benefited by the widening of the street.   We are, therefore, of the opinion that the right of plaintiff to the use of the street for the purposes specified in the grant of its franchise constituted a piece or parcel of land within the meaning of the term as used in the street opening act of 1903, and that such property was subject to assessment for benefits accruing to it by reason of the opening of the street. We perceive no insuperable difficulty in making a diagram delineating thereon that part occupied by the railroad for the purpose granted, nor in making a sale to the one who would take the least part of the property assessed, as directed in section 25 of the act.

Since the easement created constituted a piece or parcel of land, it must follow that the improvements, consisting of poles, wires, ties, rails, etc., constructed thereon and affixed to the land pursuant to the terms of the grant and necessary to the use of the easement for the purpose granted, must be deemed a part of such piece or parcel of land.   (*Appeal of North Beach & M. R. R. Co.*, 32 Cal. 499, and cases therein cited.)   The assessment of the franchise, a term used to designate plaintiff's estate in the land, constituted an assessment of all the property included in the term "land," when applied to plaintiff's interest in the street.   The greater includes the less, and since the "ties, tracks, poles and switches" were included in the term "franchise," upon which the assessment was levied, the specific mention of these improvements must be deemed surplusage, and while unauthorized by statute, gives no ground for enjoining the sale.   Any objection to the form or amount of the assessment should be made to the council, which, by section 19 of the act, is authorized to correct, change, or modify the same.   We think it clearly appears that it was the intent of the legislature that the rights

of way of railroads, whether owned in fee or otherwise, should be assessed for the cost of widening streets in proportion to the benefits inuring to such property as a result of the improvement made. That it might, as suggested by counsel, have devised a better means of enforcing the payment of the assessment, we have no doubt.

The judgment is reversed.

Allen, P. J., and James, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 12, 1912, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 9, 1912.