[No. 27122. Department Two. August 11, 1938.]

G. B. LANHAM, *Appellant,* v. J. J. FORNEY *et al.,*
*Respondents.*[1]

*Henry M. Kaye,* for appellant.

*John T. Raftis,* for respondents.

ROBINSON, J.—This case comes to the court upon
stipulated facts. From the stipulation, it appears, in
substance, that, in 1929, the town of Springdale, a
Washington municipality of the fourth class, by ordi-
nance, granted to J. P. Lanham, his heirs, executors, ad-
ministrators, and assigns, the right to carry on a gen-

[1]Reported in 81 P. (2d) 777.

eral water service business, and to that end to lay, maintain, and operate, in and under its streets, alleys, and highways, the necessary pipes and conduits. The water system was installed shortly thereafter at an approximate expense of twenty-five hundred dollars, and has ever since been in operation. G. B. Lanham, plaintiff below, appellant here, has succeeded to the rights of the original holder of this franchise.

In 1905, W. Gillingham owned property abutting on the east side of First street, in Springdale. There was a natural spring on this property, and he had obtained a permit from the town council to lay a pipe across First street to carry water to other property owned by him on the west side of the street. The pipe was installed, and is still in place. The respondents subsequently became the owners of the Gillingham properties just mentioned, and for more than fifteen years have operated a garage and service station thereon, and during that time have used the water conveyed from the spring across the street through the pipe originally installed by Gillingham.

In May, 1935, the respondents, having acquired property north of Harrison avenue and north of their property on which the spring is located, applied to the council of Springdale for permission to lay water pipes across Harrison avenue to carry water from the spring to their dwelling house on the north side of Harrison avenue. A permit was granted and a pipe was laid in 1935, and since that time they have used the water conveyed through this pipe for domestic purposes.

At the time the permit last mentioned was secured, J. J. Forney and Howard Forney, two of the respondents, were, respectively, mayor and clerk of the town of Springdale. Regarding this permit, it is stipulated:

"That the permit above referred to was not issued in any regular session of the Town Council of the Town of

Springdale, Washington; that in May, 1935, several members of said council being either ill or absent from Springdale, Washington, it was not possible to hold a session of said council, and that J. J. Forney, in lieu thereof, secured a written permit from the members of said town council who were members of the street committee of said town council; that said street committee was empowered and authorized to handle matters pertaining to the use of streets in said town of Springdale, Washington; that plaintiff G. B. Lanham was a member of said town council in 1935 and refused to sign said permit when requested to do so by said J. J. Forney; that said plaintiff G. B. Lanham admits having seen said signed permit; that said permit was never signed by the mayor or town clerk of the town of Springdale and no showing was ever made as to the necessity of such permits being signed by the mayor and clerk or either of them; that said permit was never incorporated in the minutes of said town council but was left with other papers in the care of the town clerk, and the present whereabouts of said permit is unknown; that no objection has ever been made by said town of Springdale, Washington, as to the manner or form of issuing said permit for the use of said streets by defendants, as aforesaid, and that the fact of giving such permit, as above stated, was known to and discussed by members of said town council in regular session, and no action was ever taken one way or the other in regard to same, other than stated above.

"That in giving said permit, as above stated, no length of time was mentioned therein within which said streets could be used for laying said pipes, and that said permit contained no express provision as to the duty or responsibility of defendants in regard to maintaining the said streets in proper condition."

It is not claimed that the appellant's franchise was an exclusive one, and it is stipulated that the respondents have never attempted to sell water or to furnish water to others, but have used the water pipe across First street strictly to supply water to their own garage and

service station, and the water pipe across Harrison avenue to supply water for their own domestic use.

This suit was brought to enjoin the respondents from further using said water pipes. The complaint purports to state two causes of action; the first upon the theory that the appellant had a franchise, while the respondents had none, nor any lawful permit or grant, and that the maintenance of the private water system of the respondents deprived the appellant of business and custom which he would otherwise receive. The second cause of action is prosecuted on the theory that the maintenance of the water pipes under the street constitutes a public nuisance. The lower court denied the application for injunctive relief and entered a judgment dismissing the action.

As to the pipe across First street, it appears that Gillingham, who first installed it, merely ran a pipe under the street from one of his abutting properties to another. The respondents have succeeded to his interest in both properties. The rule is well settled that the ownership in fee to land over which a street is constructed is presumed, in the absence of evidence to the contrary, to be in the owner of the abutting property. *Simons v. Wilson,* 61 Wash. 574, 112 Pac. 653; *Motoramp Garage Co. v. Tacoma,* 136 Wash. 589, 241 Pac. 16. It is further the rule that the owner of the abutting property or the owner of the fee has the right to use the sub-surface of the street for all lawful purposes that are consistent with the full enjoyment of the easement acquired by the public for travel and transportation. *Holm v. Montgomery,* 62 Wash. 398, 113 Pac. 1115, 34 L. R. A. (N. S.) 506.

These rules are very generally approved by the courts of our sister states. See 44 C. J. 954; Elliott, Roads and Streets (4th ed.), § 876-1, and note to *Cole-*

*grove Water Co. v. Hollywood,* 151 Cal. 425, 90 Pac. 1053, in 13 L. R. A. (N. S.) 904.

An examination of the texts and the cases cited therein convinces us of the soundness of the general observation made in 4 McQuillin, Municipal Corporations (2nd ed.) 137, § 1448:

"It seems that the general rule is that the owner of the fee of a street has a right, without a permit, to lay water pipes, in or across the street so long as he does not unduly interfere with public travel or with the subsurface use to which the street as such is subject."

█ What we have already said would be sufficient to dispose of this appeal if the property on which the spring is located and the property on which the dwelling house is located abut on Harrison avenue. While we infer from the stipulation that they do, the stipulation does not definitely so state. But even if they, or either of them, do not so abut, we think that the appellant shows no right to enjoin the maintenance of the pipe across Harrison avenue or abate it as a nuisance.

It is said in 19 R. C. L. at page 783:

"A municipality may also allow an individual to make use of the space below the highway for his private purposes, even if he is not the owner of the fee of the space so occupied, if the public easement is in no way interfered with."

Chapter 207, Laws of 1927, p. 302, an act relating to powers of municipal corporations of the fourth class, provides, in part:

"The council of said town shall have power: . . .
"13. To permit, under such restrictions as they may deem proper, the laying . . . of gas and water pipes in the public streets; . . ." Rem. Rev. Stat., § 9175 [P. C. § 837].

It appears in that portion of the stipulation of facts, which we have above quoted, that the permit for the laying of the pipe across Harrison avenue was not

granted by the town council acting directly or as a body, but by those members of the town council who were members of the street committee. But it is also stipulated "that said street committee was empowered to handle matters pertaining to the use of streets in said town of Springdale, Washington." No copy of the written permit is before us, but it is stipulated that no length of time was mentioned therein within which the street might continue to be used. It seems evident that the permit, as distinguished from a franchise, which is a formal and permanent contract, was a mere license, revocable at any time, the giving of which, we think, might lawfully be delegated to a street committee by the town council. Furthermore, it appears that the council was subsequently informed of all the facts and has never raised any objection or taken any steps to revoke or cancel the permit.

It cannot be successfully maintained that water pipes, which are already laid under the surface of the street, constitute a public nuisance. *Mayor v. Holland Trust Co.,* 37 Atl. (N. J. Ch.) 438; *Green v. Miller,* 249 N. Y. 88, 162 N. E. 593. And even if the pipes constituted a nuisance, the appellant does not make a sufficient showing of special damage to qualify as a plaintiff in an abatement action. *State ex rel. Vandervort v. Grant,* 156 Wash. 96, 286 Pac. 63; *Kemp v. Seattle,* 149 Wash. 197, 270 Pac. 431.

The judgment appealed from is affirmed.

Steinert, C. J., Beals, Millard, and Blake, JJ., concur.